[946 NE2d 159, 921 NYS2d 171]

Penguin Group (USA) Inc., Appellant, v American Buddha, Respondent.

Argued February 9, 2011; decided March 24, 2011

**POINTS OF COUNSEL**

*Cowan Liebowitz & Latman, P.C.*, New York City (*Richard Dannay* and *Thomas Kjellberg* of counsel), for appellant. I. The dominant role of the Internet in commerce and culture illustrates the justification for the rule that out-of-state copyright infringement injures New York authors and publishers and their copyrights in New York. (*Farkas v Farkas*, 36 AD3d 852; *McGraw-Hill Cos., Inc. v Ingenium Techs. Corp.*, 375 F Supp 2d 252; *Mario Valente Collezioni, Ltd. v Confezioni Semeraro Paolo, S.R.L.*, 115 F Supp 2d 367; *Cello Holdings, L.L.C. v Lawrence-Dahl Cos.*, 89 F Supp 2d 464; *Brandt v Toraby*, 273 AD2d 429; *Peterson v Spartan Indus.*, 33 NY2d 463; *Exclaim Assoc. Ltd. v Nygate*, 10 Misc 3d 1063[A], 2005 NY Slip Op 52106[U].) II. The legislative history and the remedial purpose of CPLR 302 (a) (3), and New York case law, compel recognition that copyright infringement injures New York authors and publishers and their copyrights in New York. (*Feathers v McLucas*, 15 NY2d 443; *Reyes v Sanchez-Pena*, 191 Misc 2d 600.) III. "Injury" under CPLR 302 (a) (3) does not occur only where the initial tort is committed. (*Kramer v Hotel Los Monteros S. A.*, 57 AD2d 756; *Carte v Parkoff*, 152 AD2d 615; *Hermann v Sharon Hosp.*, 135 AD2d 682; *McGowan v Smith*, 52 NY2d 268; *Ingraham v Carroll*, 90 NY2d 592; *Iconoclast Advisers LLC v Petro-Suisse Ltd.*, 17 Misc 3d 1101[A], 2007 NY Slip Op 51784[U].) IV. The statute itself anticipates and obviates a "Pandora's box." (*Kramer v Hotel Los Monteros S. A.*, 57 AD2d 756; *Reyes v Sanchez-Pena*, 191 Misc 2d 600; *Ingraham v Carroll*, 90 NY2d 592; *Royalty*

*Network Inc. v Dishant.com, LLC,* 638 F Supp 2d 410; *McGraw-Hill Cos., Inc. v Ingenium Techs. Corp.,* 375 F Supp 2d 252; *McGowan v Smith,* 52 NY2d 268; *Allen v Auto Specialties Mfg. Co.,* 45 AD2d 331.) V. This Court has already applied CPLR 302 (a) (3) (ii) in the intellectual property context. (*Sybron Corp. v Wetzel,* 46 NY2d 197; *Friedr. Zoellner [New York] Corp. v Tex Metals Co.,* 396 F2d 300; *Sung Hwan Co., Ltd. v Rite Aid Corp.,* 7 NY3d 78.) VI. Injury to a New York copyright owner comprises more than derivative economic injury in New York. (*Taylor Corp. v Four Seasons Greetings, LLC,* 403 F3d 958; *Capitol Records Inc. v Thomas-Rasset,* 680 F Supp 2d 1045; *Christopher Phelps & Assoc., LLC v Galloway,* 492 F3d 532; *Sardi's Rest. Corp. v Sardie,* 755 F2d 719; *Warner Bros. Entertainment Inc. v RDR Books,* 575 F Supp 2d 513; *Universal City Studios, Inc. v Reimerdes,* 111 F Supp 2d 294, *affd sub nom. Universal City Studios, Inc. v Corley,* 273 F3d 429; *Fantis Foods v Standard Importing Co.,* 49 NY2d 317.) VII. New York has a substantial interest in providing its authors and publishers with convenient and effective redress for injuries arising from copyright infringement. (*In re Charter Communications, Inc.,* 393 F3d 771; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286; *McGee v International Life Ins. Co.,* 355 US 220; *Calder v Jones,* 465 US 783; *Kulko v Superior Court of Cal., City & County of San Francisco,* 436 US 84; *Shaffer v Heitner,* 433 US 186.) VIII. American Buddha's activities are far beyond merely local in character. (*LaMarca v Pak-Mor Mfg. Co.,* 95 NY2d 210; *Grimaldi v Guinn,* 72 AD3d 37; *Farkas v Farkas,* 36 AD3d 852; *Allen v Canadian Gen. Elec. Co.,* 65 AD2d 39; *Energy Brands Inc. v Spiritual Brands, Inc.,* 571 F Supp 2d 458; *Ingraham v Carroll,* 90 NY2d 592; *McGowan v Smith,* 52 NY2d 268.)

*Online Media Law, PLLC* (*Charles H. Carreon,* of the Arizona bar, admitted pro hac vice, of counsel), for respondent. I. Congress expressly preempted the field of copyright law; thus, an affirmative answer to the certified question would impermissibly intrude upon the exclusive jurisdiction of the federal courts. (*Durham Indus., Inc. v Tomy Corp.,* 630 F2d 905; *Cipollone v Liggett Group, Inc.,* 505 US 504; *United States v Price,* 361 US 304.) II. The District Court decision was correct under New York law. (*Ruhrgas AG v Marathon Oil Co.,* 526 US 574; *Insurance Corp. of Ireland v Compagnie des Bauxites de Guinee,* 456 US 694; *DiStefano v Carozzi N. Am., Inc.,* 286 F3d 81; *Bank Brussels Lambert v Fiddler Gonzalez & Rodriguez,* 171 F3d 779; *Best Van Lines, Inc. v Walker,* 490 F3d 239; *Fantis Foods v Standard Importing Co.,* 49 NY2d 317; *University Sports Publs.*

*Co., Inc. v Rizzo*, 14 Misc 3d 1211[A], 2006 NY Slip Op 52488[U].) III. The certifying panel has invited this Court into error by proposing a course of action that would certainly result in an erroneous decision. (*Sybron Corp. v Wetzel*, 46 NY2d 197; *Goldstein v California*, 412 US 546; *Capitol Records, Inc. v Naxos of Am., Inc.*, 4 NY3d 540; *Metropolitan Life Ins. Co. v Massachusetts*, 471 US 724; *Teamsters v Lucas Flour Co.*, 369 US 95; *Bates v Dow Agrosciences LLC*, 544 US 431; *Shaw v Delta Air Lines, Inc.*, 463 US 85; *Felder v Casey*, 487 US 131; *Free v Bland*, 369 US 663.) IV. The law of personal jurisdiction would be rendered ridiculous if this Court were to attempt to prescribe the situs of injury based on the type of rights that plaintiff alleged were injured. V. Answering the certified question in the affirmative would not resolve the instant case and in fact would result in another dismissal for lack of jurisdiction by the District Court after remand. VI. The District Court properly held that Digital Millennium Copyright Act procedures, the merits, and the literary efforts of opposing counsel were irrelevant. (*Sterling Natl. Bank & Trust Co. of N.Y. v Fidelity Mtge. Invs.*, 510 F2d 870; *Galgay v Bulletin Co., Inc.*, 504 F2d 1062; *Arlio v Lively*, 474 F3d 46.)

*Public Citizen Litigation Group* (*Michael H. Page*, of the District of Columbia bar, admitted pro hac vice, of counsel), for Public Citizen, amicus curiae. I. This Court's decisions involving the situs of injury in commercial tort cases are controlling here. (*Sybron Corp. v Wetzel*, 46 NY2d 197; *Zippo Mfg. Co. v Zippo Dot Com, Inc.*, 952 F Supp 1119.) II. Under *Sybron Corp. v Wetzel* (46 NY2d 197 [1978]) and its progeny, the situs of injury under CPLR 302 (a) (3) is generally where the critical events associated with the dispute took place, which might include where major customers are actively solicited away. (*Feathers v McLucas*, 15 NY2d 443; *Spectacular Promotions, Inc. v Radio Sta. WING*, 272 F Supp 734; *American Eutectic Welding Alloys Sales Co. Inc. v Dytron Alloys Corp.*, 439 F2d 428; *Friedr. Zoellner [New York] Corp. v Tex Metals Co.*, 396 F2d 300; *Fantis Foods v Standard Importing Co.*, 49 NY2d 317; *Davidson Extrusions v Touche Ross & Co.*, 131 AD2d 421; *Interface Biomedical Labs. Corp. v Axiom Med., Inc.*, 600 F Supp 731; *Benifits by Design Corp. v Contractor Mgt. Servs., LLC*, 75 AD3d 826; *Polansky v Gelrod*, 20 AD3d 663.) III. Penguin Group (USA) Inc.'s interpretation of CPLR 302 (a) (3) is inconsistent with New York Legislature's desire to avoid chilling speech. (*American Eutectic Welding Alloys Sales Co., Inc. v Dytron Alloys Corp.*, 439 F2d 428; *Spectacular Promotions, Inc. v Radio Sta. WING*, 272 F Supp 734; *Ehrenfeld v Bin Mahfouz*, 9 NY3d 501; *Legros*

*v Irving*, 38 AD2d 53; *Montgomery v Minarcin*, 263 AD2d 665; *New York Times Co. v Sullivan*, 376 US 254.)

*Kilpatrick Stockton LLP*, New York City (*Marc Lieberstein* of counsel), for International Trademark Association, amicus curiae. The Court of Appeals should answer only the Second Circuit's certified question as it relates to copyrights. (*Los Angeles v Lyons*, 461 US 95; *Long Is. Light. Co. v County of Suffolk, N.Y.*, 604 F Supp 759; *Chloé v Queen Bee of Beverly Hills, LLC*, 616 F3d 158; *Dastar Corp. v Twentieth Century Fox Film Corp.*, 539 US 23; *Energy Brands Inc. v Spiritual Brands, Inc.*, 571 F Supp 2d 458; *PDK Labs., Inc. v Proactive Labs., Inc.*, 325 F Supp 2d 176; *Citigroup Inc. v City Holding Co.*, 97 F Supp 2d 549.)

*Davis Wright Tremaine LLP*, New York City (*Elizabeth A. McNamara* of counsel), for American Association of Publishers and others, amici curiae. I. Digital piracy causes direct injury to publishers in New York. (*Sybron Corp. v Wetzel*, 46 NY2d 197; *Sung Hwan Co., Ltd. v Rite Aid Corp.*, 7 NY3d 78; *Fantis Foods v Standard Importing Co.*, 49 NY2d 317; *Kramer v Hotel Los Monteros S. A.*, 57 AD2d 756; *Weiss v Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff*, 85 AD2d 861; *McGraw-Hill Cos., Inc. v Ingenium Techs. Corp.*, 375 F Supp 2d 252; *Cello Holdings, L.L.C. v Lawrence-Dahl Cos.*, 89 F Supp 2d 464; *Mario Valente Collezioni, Ltd. v Confezioni Semeraro Paola, S.R.L.*, 115 F Supp 2d 367.) II. An understanding of copyright law informs the nature of the injury experienced by publishers whose works are pirated and makes plain that such publishers have been injured within the state under CPLR 302 (a) (3). (*Sybron Corp. v Wetzel*, 46 NY2d 197; *DiStefano v Carozzi N. Am., Inc.*, 286 F3d 81; *Salinger v Colting*, 607 F3d 68; *Sung Hwan Co., Ltd. v Rite Aid Corp.*, 7 NY3d 78; *eBay Inc. v MercExchange, L. L. C.*, 547 US 388; *Twentieth Century Music Corp. v Aiken*, 422 US 151; *Princeton Univ. Press v Michigan Document Servs., Inc.*, 99 F3d 1381; *Basic Books, Inc. v Kinko's Graphics Corp.*, 758 F Supp 1522; *Fox Film Corp. v Doyal*, 286 US 123; *Merkos L'Inyonei Chinuch, Inc. v Otsar Sifrei Lubavitch, Inc.*, 312 F3d 94.) III. New York law recognizes the importance of publishing to the state. (*Immuno AG. v Moor-Jankowski*, 77 NY2d 235; *Matter of Beach v Shanley*, 62 NY2d 241; *Davis v Costa-Gavras*, 580 F Supp 1082.)

## OPINION OF THE COURT

Graffeo, J.

The United States Court of Appeals for the Second Circuit has asked us a question regarding the scope of long-arm

jurisdiction under CPLR 302 (a) (3) (ii) in the context of a federal copyright infringement action.

Plaintiff Penguin Group (USA) is a large trade book publisher with its principal place of business in New York City. Defendant American Buddha is an Oregon not-for-profit corporation whose principal place of business is in Arizona. It operates two Web sites—the American Buddha Online Library and the Ralph Nader Library[1]—that are hosted on servers located in Oregon and Arizona.

Penguin commenced this copyright infringement action against American Buddha in the United States District Court for the Southern District of New York, alleging that American Buddha infringed on Penguin's copyrights to four books: "Oil!" by Upton Sinclair; "It Can't Happen Here" by Sinclair Lewis; "The Golden Ass" by Apuleius, as translated by E.J. Kenney; and "On the Nature of the Universe" by Lucretius, as translated by R.E. Latham. The complaint alleges that American Buddha published complete copies of these works on its two Web sites, making them available free of charge to its 50,000 members and anyone with an Internet connection. The electronic copying and uploading of the works was apparently undertaken in Oregon or Arizona.

American Buddha's Web sites assure its users that its uploading of these works and the users' downloading of them do not constitute copyright infringement because they are protected under sections 107 and 108 of the Copyright Act (17 USC § 101 *et seq.*), which govern fair use and reproduction by libraries and archives. Penguin disputes that any exception to the Copyright Act applies to American Buddha's activities.

American Buddha moved to dismiss the complaint for lack of personal jurisdiction, arguing that its ties to New York were too insubstantial. In response, Penguin asserted that it had secured long-arm jurisdiction over American Buddha by virtue of CPLR 302 (a) (3) (ii), which provides jurisdiction over nondomiciliaries who commit tortious acts outside the state that result in injuries within New York. American Buddha countered that CPLR 302 (a) (3) (ii) was inapplicable because Penguin did not suffer an in-state injury.

The District Court granted American Buddha's motion and dismissed the complaint, holding that Penguin was injured in

---

1. The Ralph Nader Library is not affiliated with Ralph Nader.

Oregon or Arizona, where the copying and uploading of the books took place (2009 WL 1069158, 2009 US Dist LEXIS 34032 [SD NY]). The court determined that Penguin suffered only a "purely derivative economic injury" in New York based on its domicile here, which was insufficient to trigger CPLR 302 (a) (3) (ii). (2009 WL 1069158 at *4, 2009 US Dist LEXIS 34032 at *11.) Although the court acknowledged that the Internet could be a complicating factor in analyzing personal jurisdiction, it concluded that the Internet played "no role in determining the situs of [Penguin's] alleged injury" since the claimed infringement occurred in Oregon or Arizona. (2009 WL 1069158 at *4, 2009 US Dist LEXIS 34032 at *12.)

Recognizing a split of authority in the New York district courts regarding the application of CPLR 302 (a) (3) (ii) to copyright infringement cases against out-of-state defendants, the Second Circuit certified the following question to us:

> "In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302 (a) (3) (ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?" (609 F3d 30, 32 [2d Cir 2010].)

The Second Circuit invited this Court to "alter this question as it should deem appropriate" (*id.* at 42) and noted that, "in the context of certifying a question to the New York Court of Appeals[,] . . . the allegation of distribution over the Internet may be a factor in the Court's interpretation of the statute in question" (*id.* at 39).[2]

Because the Internet plays a significant role in this case, we narrow and reformulate the certified question to read:

> "In copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y.

---

2. The Second Circuit also stated that "[t]here is a possible question at the threshold that neither the district court nor the parties have addressed and which we do not here decide: whether a copyright—in and of itself an intangible thing—has a physical location for jurisdictional purposes and, if so, what that location is" (609 F3d at 36 n 4). The Second Circuit resolved to "accept for the purposes of this appeal the district court's implicit conclusion that copyrights have a location and that their location in this case is in New York State" (*id.*). We, too, accept this characterization in answering the certified question.

> C.P.L.R. § 302 (a) (3) (ii) the location of the infring-
> ing action or the residence or location of the
> principal place of business of the copyright holder?"

In answer to this reformulated question and under the circum-
stances of this case, we conclude it is the location of the copy-
right holder.

CPLR 302 (a) (3) (ii) allows a court in New York to exercise
personal jurisdiction over an out-of-state defendant when the
nondomiciliary:

> "3. commits a tortious act without the state causing
> injury to person or property within the state, except
> as to a cause of action for defamation of character
> arising from the act, if he . . .

> "(ii) expects or should reasonably expect the act to
> have consequences in the state and derives substan-
> tial revenue from interstate or international com-
> merce."

Consequently, a plaintiff relying on this statute must show
that (1) the defendant committed a tortious act outside New
York; (2) the cause of action arose from that act; (3) the tortious
act caused an injury to a person or property in New York; (4)
the defendant expected or should reasonably have expected the
act to have consequences in New York; and (5) the defendant
derived substantial revenue from interstate or international
commerce (*see LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 214
[2000]). If these five elements are met, a court must then assess
whether a finding of personal jurisdiction satisfies federal due
process (*see id.* at 216). The only issue before us concerns the
third requirement—whether an out-of-state act of copyright in-
fringement has caused injury in New York.

Penguin, supported by amici curiae American Association of
Publishers and other national publishing organizations, argues
that a New York-based copyright holder sustains an injury in
New York for purposes of CPLR 302 (a) (3) (ii) when its copy-
right is infringed through the out-of-state uploading of its
protected work onto the Internet. American Buddha and amicus
curiae Public Citizen respond that this case is controlled by
*Fantis Foods v Standard Importing Co.* (49 NY2d 317 [1980]),
where we held that a derivative economic injury felt in New
York based solely on the domicile of the plaintiff is insufficient
to establish an in-state injury within the meaning of the stat-
ute. Both parties raise compelling arguments.

Our analysis begins with *Fantis Foods*, where we found personal jurisdiction to be lacking in the absence of a "direct injury" within New York. In that case, Standard, a New York wholesaler of feta cheese, asserted a claim for conversion against a Greek entity that had diverted a cheese shipment—meant to be shipped to Standard in Chicago—to a competitor while the shipment was in Greece or on the high seas. We concluded that personal jurisdiction over the Greek defendant did not lie under CPLR 302 (a) (3) (ii) because:

> "In final analysis the only possible connection between the claimed conversion and any injury or foreseeable consequence in New York is the fact that Standard is incorporated and maintains offices there. It has, however, long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there" (*id.* at 326).

In a different commercial tort context, in *Sybron Corp. v Wetzel* (46 NY2d 197 [1978]), we held that an injury had occurred in New York under CPLR 302 (a) (3) (ii). The defendant in *Sybron*, a nondomiciliary corporation, hired a former employee of Sybron—a competitor engaged in manufacturing in New York—allegedly to obtain Sybron's protected trade secrets. Recognizing that the locus of injury in commercial cases "is not as readily identifiable as it is in torts causing physical harm" (*id.* at 205), we determined that Sybron sustained a sufficiently direct injury in New York to support jurisdiction under CPLR 302 (a) (3) (ii) since its claim was based on more than just its in-state domicile. Rather, Sybron had alleged that it acquired the trade secrets at issue in New York and, further, that the defendant's unfair competition threatened to pilfer Sybron's significant New York customers.

*Fantis Foods* and *Sybron* both cited favorably to *American Eutectic Welding Alloys Sales Co. v Dytron Alloys Corp.* (439 F2d 428 [2d Cir 1971]). There, the plaintiffs, two related New York corporations, brought an action against an out-of-state competitor alleging that it induced their employees to work for the competitor and to use confidential information to lure away plaintiffs' customers in Kentucky and Pennsylvania. The Second

Circuit identified three options for determining the situs of injury under CPLR 302 (a) (3) (ii) in a commercial tort case: "(1) any place where plaintiff does business; (2) the principal place of business of the plaintiff; and (3) the place where plaintiff lost business" (*id.* at 433, quoting *Spectacular Promotions, Inc. v Radio Sta. WING*, 272 F Supp 734, 737 [ED NY 1967, Weinstein, J.]). The court determined that the third choice "seem[ed] most apt," observing that "[t]he place where the plaintiff lost business would normally be a forum reasonably foreseeable by a tortfeasor" (*id.*). Because plaintiffs alleged a loss of business only in Kentucky and Pennsylvania, the claim against the competitor was dismissed for lack of personal jurisdiction in New York. The court rejected plaintiffs' reliance on their New York domicile, reasoning that any "derivative commercial injury" predicated on a loss of sales in other states was too remote to establish an in-state injury within the meaning of the statute (*id.*).

The injury in the case before us is more difficult to identify and quantify because the alleged infringement involves the Internet, which by its nature is intangible and ubiquitous. But the convergence of two factors persuades us that a New York copyright owner alleging infringement sustains an in-state injury pursuant to CPLR 302 (a) (3) (ii) when its printed literary work is uploaded without permission onto the Internet for public access. First, it is clear that the Internet itself plays an important role in the jurisdictional analysis in the specific context of this case. It is widely recognized that "the digital environment poses a unique threat to the rights of copyright owners" and that "digital technology enables pirates to reproduce and distribute perfect copies of works—at virtually no cost at all to the pirate" (House Commerce Comm Rep on Digital Millennium Copyright Act of 1998, HR Rep 551, 105th Cong, 2d Sess, at 25, reprinted in 10 Nimmer on Copyright, Appendix 53, at 37). Indeed, the rate of e-book piracy has risen in conjunction with the increasing popularity of electronic book devices (*see* Trivedi, *Writing the Wrong: What the E-Book Industry Can Learn from Digital Music's Mistakes with DRM*, 18 JL & Pol'y 925, 928 [2010]).

The crux of Penguin's copyright infringement claim is not merely the unlawful electronic copying or uploading of the four copyrighted books. Rather, it is the intended consequence of those activities—the instantaneous availability of those copyrighted works on American Buddha's Web sites for anyone, in New York or elsewhere, with an Internet connection to read

and download the books free of charge.[3] Unlike *American Eutectic*, where the locus of injury was clearly circumscribed to two other states, the alleged injury in this case involves online infringement that is dispersed throughout the country and perhaps the world. In cases of this nature, identifying the situs of injury is not as simple as turning to "the place where plaintiff lost business" (*American Eutectic*, 439 F2d at 433) because there is no singular location that fits that description.

As a result, although it may make sense in traditional commercial tort cases to equate a plaintiff's injury with the place where its business is lost or threatened, it is illogical to extend that concept to online copyright infringement cases where the place of uploading is inconsequential and it is difficult, if not impossible, to correlate lost sales to a particular geographic area. In short, the out-of-state location of the infringing conduct carries less weight in the jurisdictional inquiry in circumstances alleging digital piracy and is therefore not dispositive.

The second critical factor that tips the balance in favor of identifying New York as the situs of injury derives from the unique bundle of rights granted to copyright owners. The Copyright Act gives owners of copyrighted literary works five "exclusive rights," which include the right of reproduction; the right to prepare derivative works; the right to distribute copies by sale, rental, lease or lending; the right to perform the work publicly; and the right to display the work publicly (*see* 17 USC § 106). Hence, a copyright holder possesses an overarching "right to exclude others from using his property" (*eBay Inc. v MercExchange, L. L. C.*, 547 US 388, 392 [2006] [internal quotation marks and citation omitted]).

Based on the multifaceted nature of these rights, a New York copyright holder whose copyright is infringed suffers something more than the indirect financial loss we deemed inadequate in *Fantis Foods*. For instance, one of the harms arising from copyright infringement is the loss or diminishment of the incentive to publish or write (*see Twentieth Century Music Corp. v Aiken*, 422 US 151, 156 [1975]; *see also Princeton Univ. Press v Michigan Document Servs., Inc.*, 99 F3d 1381, 1391 [6th Cir 1996], *cert denied* 520 US 1156 [1997] ["(P)ublishers obviously need economic incentives to publish scholarly works . . . If publishers cannot look forward to receiving permission fees, why should

---

3. Of course, we take no position on the merits of Penguin's claims.

they continue publishing marginally profitable books at all? And how will artistic creativity be stimulated if the diminution of economic incentives for publishers to publish academic works means that fewer academic works will be published?"]). And, the harm to a plaintiff's property interest in copyright infringement cases "has often been characterized as irreparable in light of possible market confusion" (*Salinger v Colting*, 607 F3d 68, 81 [2d Cir 2010]).

Moreover, the absence of any evidence of the actual downloading of Penguin's four works by users in New York is not fatal to a finding that the alleged injury occurred in New York.[4] In *Sybron*, we made clear that a tort committed outside the state that was likely to cause harm through the loss of business inside the state was sufficient to establish personal jurisdiction regardless of whether damages were likely recoverable or even ascertainable (*see* 46 NY2d at 204; *see also Sung Hwan Co., Ltd. v Rite Aid Corp.*, 7 NY3d 78, 85 [2006]). Courts often issue injunctive relief in copyright infringement cases to halt impermissible uses because "to prove the loss of sales due to infringement is . . . notoriously difficult" (*Salinger*, 607 F3d at 81 [internal quotation marks and citation omitted]). In any event, it is undisputed that American Buddha's Web sites are accessible by any New Yorker with an Internet connection and, as discussed, an injury allegedly inflicted by digital piracy is felt throughout the United States, which necessarily includes New York.

In sum, the role of the Internet in cases alleging the uploading of copyrighted books distinguishes them from traditional commercial tort cases where courts have generally linked the injury to the place where sales or customers are lost. The location of the infringement in online cases is of little import inasmuch as the primary aim of the infringer is to make the works available to anyone with access to an Internet connection, including computer users in New York. In addition, the injury to a New York copyright holder, while difficult to quantify, is not as remote as a purely indirect financial loss due to the broad spectrum of rights accorded by copyright law. The concurrence of these two elements—the function and nature of the Internet and the diverse ownership rights enjoyed by copyright

4. In its brief, Penguin asserts that its claim is solely against American Buddha and that it is "loath to sue its readers," particularly where they are assured by American Buddha's Web sites that downloading the works contained therein would not constitute copyright infringement.

holders situated in New York—leads us to view this case as closer to *Sybron* than *Fantis Foods*. Thus, we conclude that the alleged injury in this case occurred in New York for purposes of CPLR 302 (a) (3) (ii).[5]

Finally, contrary to American Buddha's assertion, our decision today does not open a Pandora's box allowing any nondomiciliary accused of digital copyright infringement to be haled into a New York court when the plaintiff is a New York copyright owner of a printed literary work. Rather, CPLR 302 (a) (3) (ii) incorporates built-in safeguards against such exposure by requiring a plaintiff to show that the nondomiciliary both "expects or should reasonably expect the act to have consequences in the state" and, importantly, "derives substantial revenue from interstate or international commerce." There must also be proof that the out-of-state defendant has the requisite "minimum contacts" with the forum state and that the prospect of defending a suit here comports with "traditional notions of fair play and substantial justice," as required by the Federal Due Process Clause (*International Shoe Co. v Washington*, 326 US 310, 316 [1945] [internal quotation marks and citation omitted]; *see also World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 291-292 [1980]). These issues are beyond the scope of this certified question and their resolution awaits further briefing before the federal courts.

Accordingly, as reformulated, the certified question should be answered in accordance with this opinion.

Chief Judge Lippman and Judges Ciparick, Read, Smith, Pigott and Jones concur.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of the Court of Appeals (22 NYCRR 500.27), and after hearing

---

5. We do not find it necessary to address whether a New York copyright holder sustains an in-state injury pursuant to CPLR 302 (a) (3) (ii) in a copyright infringement case that does not allege digital piracy and, therefore, express no opinion on that question (*compare McGraw-Hill Cos., Inc. v Ingenium Tech. Corp.*, 375 F Supp 2d 252, 256 [SD NY 2005] ["The torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held"] *with Freeplay Music, Inc. v Cox Radio, Inc.*, 2005 WL 1500896, 2005 US Dist LEXIS 12397 [SD NY 2005] [holding that personal jurisdiction over a nondomiciliary in a copyright infringement case did not exist because the injury occurred where the alleged out-of-state infringement took place]).

argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in accordance with the opinion herein.