12-1883-cv
Troma Entertainment v. Robbins, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2013

(Argued: April 29, 2013 ;     Final Submission:  July 25, 2013;
Decided: September 6, 2013)

Docket No. 12-1883-cv

------------------------------------

TROMA ENTERTAINMENT, INC.,

*Plaintiff-Appellant*,

- v -

CENTENNIAL PICTURES INC., PAN GLOBAL ENTERTAINMENT, LLC,

*Defendants*,

LANCE H. ROBBINS, KING BRETT LAUTER,

*Defendants-Appellees*.

------------------------------------

Before:     JACOBS and SACK, *Circuit Judges*, and RAKOFF, *District Judge*.[*]

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

Appeal by the plaintiff-appellant from a judgment of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*) dismissing its lawsuit for lack of personal jurisdiction over defendants-appellees and for improper venue.  We agree with the district court that the plaintiff-appellant's allegations concerning personal jurisdiction fail to establish a non-speculative and direct New York-based injury that goes beyond economic losses suffered in the state, as required by the provision of New York State's long-arm statute pursuant to which jurisdiction is asserted, N.Y. C.P.L.R. § 302(a)(3)(ii).  The district court was therefore correct in declining to exercise personal jurisdiction over the defendants-appellees, and accordingly dismissing the lawsuit against them.

Affirmed.

STUART REISER (Manuel A. Arroyo, Rachel Schulman, Esq., *on the brief*), Shapiro, Croland, Reiser, Apfel & Di Iorio, LLP, Hackensack, NJ, *for Plaintiff-Appellant*.

Lance H. Robbins, *pro se*, North Hollywood, CA.

King Brett Lauter, *pro se*, Marina Del Rey, CA.

Brian Marc Feldman, John P. Bringewatt, Harter Secrest & Emery LLP, Rochester, NY, *pro bono*

2

SACK, *Circuit Judge*:

The subject of this appeal is the reach of New York State's long-arm statute in the context of alleged infringement of intellectual property. At issue is section 302(a)(3)(ii) of the New York Civil Practice Law and Rules, and in particular its requirement that the allegedly tortious conduct of the individual over whom personal jurisdiction is asserted under that section "caus[ed] injury to person or property within the state." N.Y. C.P.L.R. § 302(a)(3). The district court concluded that plaintiff-appellant Troma Entertainment, Inc., ("Troma") had failed to allege such an in-state injury, and therefore dismissed its lawsuit against defendants-appellees Lance H. Robbins and King Brett Lauter for want of personal jurisdiction. We agree with the district court and therefore affirm.

---

[*] Robbins and Lauter are proceeding *pro se*, as they did before the district court. After oral argument, we appointed Brian Feldman, Esq., as *pro bono amicus curiae* in support of Robbins's and Lauter's position. The Court expresses its thanks to Mr. Feldman and his colleagues at the law firm of Harter Secrest & Emery LLP, for accepting the appointment and for their highly professional assistance.

**BACKGROUND**

The following facts are drawn from the allegations in Troma's complaint, which are taken as true for purposes of resolving this appeal. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 56 (2d Cir. 2012).

Troma is a New York-based corporation in the business of producing and distributing "controlled budget motion pictures." Compl. ¶ 5. Two such motion pictures are spoof films titled "Citizen Toxie, Toxic Avenger Part IV," created by Troma, and "Poultrygeist: Night of the Chicken Dead," to which Troma owns distribution rights. *Id.*

In October 2009, Troma authorized one Lance Robbins to represent it in negotiations concerning the licensing of distribution rights to Citizen Toxie and Poultrygeist to a German distributor. Such authorization was supposed to lapse after thirty days if no agreement was reached. Thirty days passed with Robbins apparently unable to negotiate a deal with a German distributor. At least that was what Troma's officers thought.

As it turned out, Robbins, in cahoots with codefendant King Brett Lauter, had, a week prior to receiving authorization, entered into a distribution license in Germany with an outfit called Intravest Beteiligungs GMBH ("Intravest"). Troma alleges that Robbins and Lauter falsely assured Intravest

4

that they owned the rights to the films; purchased, as any retail customer might, German-language DVD copies of the films from Amazon.com's German website; delivered those DVDs to Intravest; and pocketed the proceeds of the agreement, without ever notifying Troma that the agreement even existed. None of these actions is alleged to have taken place in New York.

Troma learned in August 2010 that Intravest, "via pay-per-channel distribution on Silverline AG's Movie Channels," *id.* ¶ 18, had been broadcasting Citizen Toxie and Poultrygeist in Germany. Troma filed suit on March 7, 2011, against Robbins, Lauter, and two entities that are no longer parties to this litigation, in the United States District Court for the Eastern District of New York. Its complaint alleges copyright infringement under federal law, and state law claims of common law fraud and tortious interference with prospective economic advantage.

In March 2012, Robbins and Lauter, both proceeding *pro se*, filed motions to dismiss for want of personal jurisdiction. In a memorandum decision and order filed April 10, 2012, the district court (Brian M. Cogan, *Judge*) concluded that New York State's long-arm statute did not permit it to exercise personal jurisdiction over Robbins and Lauter in the Eastern District of New York. *Troma Entertainment, Inc. v. Centennial Pictures Inc.*, 853 F. Supp. 2d 326,

5

327-30 (E.D.N.Y. 2012).  It concluded that the allegations in Troma's complaint, taken as true, did not make out a *prima facie* showing that Robbins's and Lauter's conduct "caus[ed] injury within [New York]," N.Y. C.P.L.R. § 302(a)(3)(ii), as required by the provision of New York State's long-arm statute pursuant to which Troma asserted personal jurisdiction.  *Troma*, 853 F. Supp. 2d at 329-30.

On April 18, 2012, after Troma advised the district court that it did not wish to pursue a transfer of the action to the Central District of California -- where personal jurisdiction over the defendants could be exercised -- the court entered judgment dismissing Troma's lawsuit for lack of jurisdiction and improper venue.

Troma appeals.

## DISCUSSION

The only issue before us is whether the district court erred in determining that it lacked personal jurisdiction over Robbins and Lauter under New York State's long-arm statute.  "A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Group (USA) Inc. v. American Buddha* ("*Penguin I*"), 609 F.3d 30, 34 (2d Cir. 2010).  At this stage of the proceedings, a plaintiff need only make a "prima facie showing that jurisdiction exists." *Id*. at 34-35.  In other

6

words, a complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are "legally sufficient allegations of jurisdiction." *Id.* at 35 (internal quotation marks omitted). "We review a district court's legal conclusions concerning its exercise of jurisdiction *de novo*, and its underlying factual findings for clear error." *Marvel Characters, Inc. v. Kirby*, --- F.3d ---, 2013 WL 4016875, *5, 2013 U.S. App. LEXIS 16396, *13 (2d Cir. Aug. 8, 2013).

In order to exercise personal jurisdiction over a defendant, a district court must possess a statutory basis for doing so. *Id.*, 2013 U.S. App. LEXIS 16396 at *13. With few exceptions not applicable to the case at bar, the existence of such a statutory basis "is determined by the law of the state in which the court is located," *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) -- here, New York.

Troma asserts that personal jurisdiction may be exercised in the Eastern District over Robbins and Lauter through section 302(a)(3)(ii) of New York's long-arm statute. *See* N.Y. C.P.L.R. § 302(a)(3)(ii). That provision confers personal jurisdiction over an individual who "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Id.*; *see Penguin I*,

609 F.3d at 35 (discussing the requirements for establishing jurisdiction under section 302(a)(3)(ii)). At issue here is the requirement that the alleged tortious conduct "caus[ed] injury within [New York]." *Id.* Troma argues that Robbins and Lauter's alleged infringement caused such injury in the state because it resulted in "a loss of sale and a generalized harm . . . to [Troma's] exclusive distribution right" over Citizen Toxie and Poultrygeist. Appellant's Br. at 9.

It is well-settled that "residence or domicile of the injured party within [New York] is not a sufficient predicate for jurisdiction" under section 302(a)(3). *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 402 N.E.2d 122, 126, 425 N.Y.S.2d 783, 787 (1980). Honoring this principle, we have rejected as insufficient to support the exercise of jurisdiction over a defendant allegations of "remote or consequential injuries such as lost commercial profits which occur in New York only because the plaintiff is domiciled or doing business here." *Lehigh Valley Indus. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975); *see also American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 433 (2d Cir. 1971) (rejecting as insufficient "harm in New York in the sense that any sale lost anywhere in the United States affects [the plaintiff's] profits"). In sum, "[T]he suffering of economic damages in New York is insufficient, alone, to

8

establish a direct injury in New York for N.Y. C.P.L.R. § 302(a)(3) purposes."
*Penguin I*, 609 F.3d at 38 (internal quotation marks omitted).

Troma maintains that its allegations amount to more than the assertion of mere economic injury within the state. It relies principally on the New York Court of Appeals' decision in *Penguin Group (USA), Inc. v. American Buddha* ("*Penguin II*"), 16 N.Y.3d 295, 964 N.E.2d 159, 921 N.Y.S.2d 171 (2011), in which the Court answered a question we had certified to it. The plaintiff in that case, Penguin Group, alleged that defendant American Buddha had infringed its copyrights over four books by uploading copies of the books to its Internet website and "making them available free of charge to its 50,000 members and anyone with an Internet connection." *Id.* at 300, 964 N.E.2d at 160, 921 N.Y.S.2d at 172. Penguin Group brought suit in the United States District Court for the Southern District of New York, asserting personal jurisdiction within the state pursuant to section 302(a)(3)(ii). *Penguin I*, 609 F.3d at 31.

When the issue reached us on appeal, we noted that "[n]either the New York Court of Appeals nor this Court has decided what the situs of injury is in an intellectual property case." *Id.* at 36. We recognized also that "the fact that the alleged infringement . . . was conducted by means of the Internet and online libraries . . . may affect the [jurisdictional] analysis." *Id.* at 34. Finding ourselves

9

unable to predict how the New York Court of Appeals would resolve the jurisdiction issue in that case, we certified to it the question: "In copyright infringement cases, is the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) the location of the infringing action or the residence or location of the principal place of business of the copyright holder?" *Id.*

The Court of Appeals accepted our certification, but narrowed our question to address only the situation presented to it in that matter: "copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet." *Penguin II*, 16 N.Y.2d at 301, 964 N.E.2d at 161, 921 N.Y.S.2d at 173. The Court concluded that, under the circumstances presented, the situs of the injury was the location of the copyright owner -- New York.

The Court of Appeals rested this conclusion on "the convergence of two factors." *Id.* at 304, 964 N.E.2d at 163, 921 N.Y.S.2d at 175. The first was the nature of the alleged infringement, viz., the uploading and making available of Penguin Group's copyrighted works by means of the Internet. "The crux of Penguin's copyright infringement claim," the Court reasoned, "is not merely the unlawful electronic copying or uploading of the four copyrighted books." *Id.* at 304, 964 N.E.2d at 163, 921 N.Y.S.2d at 175. "Rather, it is the intended

consequences of those activities -- the instantaneous availability of those copyrighted works . . . for anyone, in New York or elsewhere, with an Internet connection to read and download the books free of charge." *Id.* at 304-05, 964 N.E.2d at 163-64, 921 N.Y.S.2d at 175-76. Because, the Court concluded, the injury occasioned by uploading is so widely dispersed, and the place of uploading largely "inconsequential," "the out-of-state location of the infringing conduct" -- the other possible situs of injury -- "carries less weight in the jurisdictional inquiry." *Id.* at 305, 964 N.E.2d at 164, 921 N.Y.S.2d at 176.

The second factor upon which the Court of Appeals rested its decision was "the unique bundle of rights granted to copyright owners." *Id.* at 305, 964 N.E.2d at 164, 921 N.Y.S.2d at 176. Infringement of intellectual property, the Court reasoned, could not only cause "indirect financial loss," but could also "diminish[] the incentive to publish or write," or engender "market confusion," presumably leading to the diminution of the value of the rights themselves. *Id.* at 306, 964 N.E.2d at 164, 921 N.Y.S.2d at 176 (quotation marks omitted). Such injury to intellectual property rights held by New York copyright owners goes beyond mere economic loss suffered in New York. The Court concluded that this was enough to establish the situs of injury as the location of the copyright owner, at least in a case in which, as the Court had already explained, the "nature and

11

function of the Internet" render the location of the infringing conduct of diminished relevance.

The Court carefully cabined its holding. First, as noted above, it modified the question we certified so as to address only copyright infringement accomplished by uploading to the Internet. And it explicitly declined "to address whether a New York copyright holder sustains an in-state injury pursuant to N.Y. C.P.L.R. 302(a)(3)(ii) in a copyright infringement case that does not allege digital piracy," citing, without endorsing either, two federal district court cases from our Circuit reaching opposing conclusions on the question. *Id.* at 307 n.5, 964 N.E.2d at 165 n.5, 921 N.Y.S.2d at 177 n.5 (citing *McGraw Hill Companies, Inc. v. Ingenium Technologies Corp.*, 375 F. Supp. 2d 252 (S.D.N.Y. 2005), and *Freeplay Music, Inc. v. Cox Radio, Inc.*, 04 civ. 5238, 2005 WL 1500896, 2005 U.S. Dist. LEXIS 12397 (S.D.N.Y. June 23, 2005)).

As Troma appears to acknowledge, the Court of Appeals' decision in *Penguin II* is too narrow to control this case. The plaintiff in *Penguin* levied allegations of a form of infringement that works an injury that is virtually impossible to localize -- the uploading and making available of copyrighted materials, free of charge, to anyone with an Internet connection. Troma has alleged no such injury. Nowhere in Troma's complaint can one find an allegation

12

suggesting that Robbins and Lauter's tortious conduct harmed Troma in a way that cannot be "circumscribed" to a particular locality. *Penguin II*, 16 N.Y.3d at 305, 964 N.E.2d at 164, 921 N.Y.S.2d at 176. This case is therefore more like "traditional commercial tort cases" in which "the place where [the plaintiff's] business is lost or threatened" exerts a significant gravitational influence on the jurisdictional analysis. *Id.* Whether that place is California -- where Robbins and Lauter allegedly hatched their scheme -- or Germany -- where they put it into effect -- we need not say. It is not New York.

Troma is left, then, to rely on the Court of Appeals' endorsement of the theory that out-of-state infringement may harm the bundle of rights held by a New York-based copyright owner in New York. We acknowledge that this is a plausible theory after *Penguin II* and agree with Troma's characterization of the Court of Appeals' articulation of it. But it is just that: a theory of injury that -- certainly in cases of the uploading and making available of copyrighted works, but also perhaps in isolation -- may satisfy section 302(a)(3)'s injury requirement in a particular case. We find nothing in the Court of Appeals' opinion, however, that relieves intellectual property owners of the obligation, in each case, to allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights of the sort *Penguin II* recognized.

13

Troma's allegations, taken as true, do not satisfy this requirement. Troma alleges that Robbins and Lauter, in essence, usurped two potential licensing agreements in Germany, and it maintains that this caused what it labels "generalized harm (i.e., statutory damages as a result of [defendants'] willful infringement) to its exclusive distribution right." Appellant's Br. at 13. We conclude that Troma's assertion of such an injury, in light of the allegations in its complaint, is far too speculative to support a finding that Troma suffered injury in New York within the meaning of section 302(a)(3)(ii).

Infringement comes in many stripes. It is not the case that any infringement anywhere can be said to diminish incentives to engage in a creative enterprise, or to harm, beyond the immediate loss of profits, the continuing value of one or more of a copyright holder's bundle of rights. Certainly the availability of the statutory damage remedy under the copyright laws does not establish automatically that this sort of injury has occurred. And we think it entirely implausible that the infringement alleged by Troma -- discrete, geographically circumscribed theft of the opportunity to license distribution of copyrighted works -- would cause such an injury.

Troma has not articulated a non-speculative and direct injury to person or property in New York that goes beyond the simple economic losses

14

that its New York-based business suffered.  It is well settled that such economic losses are not alone a sufficient basis for personal jurisdiction over the persons who caused them.  Troma has thus not made out a *prima facie* showing of personal jurisdiction under section 302(a)(3)(ii).  The district court correctly concluded that it did not have the power to exercise personal jurisdiction over Robbins and Lauter.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.