**C.B.C. WOOD PRODUCTS, INC., Plaintiff,**

v.

**LMD INTEGRATED LOGISTICS SERVICES, INC., Defendant.**

**No. 06 CV 2673(ADS)(AKT).**

United States District Court, E.D. New York.

Oct. 7, 2006.

Reisman, Peirez & Reisman, L.L.P., by E. Christopher Murray, Esq., of counsel, Garden City, NY, for Plaintiff.

Mound Cotton Wollan & Greengrass, by Francis A. Montbach, Esq., Jacqueline K. Seidel, Esq., of counsel, New York, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

C.B.C. Wood Products, Inc. ("CBC" or the "Plaintiff"), commenced this diversity action against LMD Integrated Logistics Services, Inc. ("LMD" or the "Defendant"), seeking monetary damages for the alleged breach of an agreement and conversion of property.

Pending before the Court is a motion to dismiss the Complaint by the Defendant pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) ("Fed. R. Civ.P.") or, alternatively, to transfer venue to the District of New Jersey pursuant to 28 U.S.C. § 1406(a).

## BACKGROUND

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) is "inherently a matter requiring the resolution of factual issues outside of the pleadings." *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, 2001 WL 1468168, at *1 (S.D.N.Y. Nov.19, 2001). As a result, "all pertinent documentation submitted by the parties may be considered in deciding the motion." *Id.* The following facts, therefore, are drawn from the complaint, affidavits, and documentary exhibits submitted by the Plaintiff and the Defendant, and are construed in the light most favorable to the Plaintiff. *Id.* (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986)).

The Plaintiff, a New York corporation, is a wholesale distributor of plywood and other lumber products. The Defendant, a provider of logistics services for warehousing, distribution and transportation for domestic and international companies, is incorporated in Delaware, with its principal place of business in California.

In or about December 2005, the Plaintiff received a shipment of plywood from Bellimar, BVBA, a Belgian export agency. The plywood was stored at the Defendant's Elizabeth, New Jersey warehouse and the Plaintiff and the Defendant communicated by telephone and mail regarding the stored plywood. The Defendant was not responsible for transporting the lumber into New York.

According to the declaration of Louis Diblosi, Jr., ("Diblosi declaration") the Defendant's Chief Executive Officer and Chairman, in December 2005, the Defendant released some of the plywood to the Plaintiff. On December 20, 2005, the Plaintiff informed Bellimar that it could not complete payment of its invoice. Also, on December 20, 2005, in an e-mail, Bellimar instructed the Defendant not to release any additional plywood without its written confirmation. Bellimar provided the Defendant with copies of the invoices from its transaction with the Plaintiff, stating that "the goods are property of Bellimar until complete payment of the invoice." Diblosi declaration at Ex.3. The Defendant did not release any additional plywood from its storage facility to the Plaintiff.

In its Complaint, the Plaintiff alleges that the plywood stored at LMD's New Jersey facility was CBC's property and

that the Defendant was aware that CBC had full ownership of the plywood. The Plaintiff claims that LMD exercised unlawful dominion and control over CBC's property and released a portion of plywood to a third party. The Plaintiff asserts that the Defendant breached its agreement with the Plaintiff and wrongfully converted the Plaintiff's property. The Plaintiff does not allege that it had a written contract with the Defendant.

The Defendant now moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(2) and (3) for lack of personal jurisdiction and improper venue, or alternatively, to transfer venue to the District of New Jersey.

## DISCUSSION

### I. PERSONAL JURISDICTION

■■ In a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2), the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999)(citing *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996)). Where, as here, the parties have not yet conducted discovery, the plaintiff may defeat such a motion by making a prima facie showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence. *Bank Brussels Lambert*, 171 F.3d at 784; *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999). Furthermore, materials presented by the plaintiff should be construed in the light most favorable to the plaintiff and all doubts resolved in its favor. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

■■ Personal jurisdiction over a nonresident defendant in a federal diversity action is determined by the law of the forum state. *See Whitaker*, 261 F.3d at 208. Therefore, this Court must look to New York's personal jurisdiction statutes, namely the New York Civil Practice Law and Rules ("CPLR") Sections 301 and 302, to determine whether the Plaintiff has made a prima facie showing of personal jurisdiction over the out-of-state Defendant. Then, if jurisdiction is found, the Court must determine whether such exercise of jurisdiction under state law satisfies the federal due process requirements of "fair play and substantial justice." *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Bank Brussels Lambert*, 171 F.3d at 784.

In the Complaint, the Plaintiff alleges that the Defendant operates facilities in "numerous states providing worldwide warehousing, transportation and distribution services." The Plaintiff further claims that the Defendant regularly conducts business in New York by providing transportation and distribution services, soliciting customers and entering into contracts in the state. In its memorandum of law in opposition to the Defendant's motion, the Plaintiff argues that personal jurisdiction exists under Sections 301 and 302(a)(1). Specifically, the Plaintiff claims that: (1) LMD is a licensed commercial freight carrier in 48 states, including New York; (2) LMD provides trucking and delivery services into New York; (3) LMD maintains an interactive website permitting consumers to place orders and conduct transactions on the internet; and (4) LMD had regular contacts with the Plaintiff at its New York office, including sending invoices to CBC, engaging in telephone calls

with CBC employees and notifying CBC when material had arrived at the warehouse.

### A. As To General Jurisdiction

■ Pursuant to New York CPLR § 301, "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." This section authorizes the general exercise of personal jurisdiction over a nonresident defendant if it is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F.Supp.2d 544, 547–48 (S.D.N.Y.2001) (citations omitted). "Occasional or casual business in New York will not meet the requirements of Section 301." *See Fashion Fragrance & Cosmetics v. Croddick*, No. 02 Civ. 6294, 2003 WL 342273, *3, 2003 U.S. Dist. LEXIS 2220, at *7 (S.D.N.Y. Feb.11, 2003).

To determine whether a defendant "does business" in New York, courts have focused on the following factors: "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985); *CES Indus., Inc. v. Minn. Transition Charter School*, 287 F.Supp.2d 162, 166 (E.D.N.Y.2003).

■ In an affidavit, Leslie Roth, Vice President of the Plaintiff, states that the Court should exercise personal jurisdiction over the Defendant, pursuant to Section 301 because the Defendant: (1) is a licensed freight carrier in New York; (2) maintains a website accessible to residents of New York; and (3) had regular contacts with the Plaintiff through telephone calls to the Plaintiff's New York office and mailing of invoices to the Plaintiff's New York office.

■ It is undisputed that the Defendant does not have a New York office or any property in New York. Further, it is undisputed that the Defendant does not have New York bank accounts or employees in New York. Nor does the Defendant have a mailing address, telephone line, or post office box within the state. In addition, the Defendant does not pay New York income or property taxes. Although the Plaintiff argues that the Defendant has contact with New York through telephone calls to the Plaintiff in New York and the mailing of invoices to the Plaintiff in New York, the " '[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services.' " *Burrows Paper Corp. v. R.G. Engineering, Inc.*, 363 F.Supp.2d 379, 384 (N.D.N.Y. 2005) (quoting *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982)).

■ Although the Plaintiff further alleges that the Defendant maintains a website accessible by New York residents and to solicit New York residents, it is well-established that solicitation of business alone will not justify a finding of corporate presence in New York. *See Fashion Fragrance & Cosmetics*, 2003 WL 342273, *5, 2003 U.S. Dist. LEXIS 2220, at *9. The Plaintiff does not claim that the website was created in New York or that the server on which the site exists and from which it is accessed is located in New York. Notably, the Plaintiff admits that the Defendant's website can only be accessed through use of a password available to pre-existing customers, resulting in a website that is not interactive to consumers who are browsing the internet. "A firm does not 'do[ ] business' in New York

simply because New York citizens can contact the firm via the worldwide web." *Aqua Prod., Inc. v. Smartpool, Inc.*, 2005 WL 1994013 (S.D.N.Y. Aug. 18, 2005); *see also In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F.Supp.2d 376, 383 (S.D.N.Y.2002) (citing *Spencer Trask Ventures v. Archos S.A.*, 2002 WL 417192, at *6–*7 (S.D.N.Y. Mar.18, 2002) ("[T]he fact that a foreign corporation has a website accessible in New York is insufficient to confer jurisdiction under CPLR § 301")); *Drucker Cornell v. Assicurazioni Generali S.p.A. Consolidated*, No. 97 Civ 2262, 98 Civ. 9186, 2000 WL 284222, at *2 (S.D.N.Y. Mar.16, 2000).

"Moreover, even if such an exercise of jurisdiction were proper under § 301, it would not be permissible under the Due Process Clause absent, at a minimum, an allegation that [the defendant's] use of the website was purposefully directed toward New York." *Drucker Cornell*, 2000 WL 284222 at *2. The Plaintiff makes no such claim. "Were it otherwise, every entity or individual that ran a highly interactive website from anywhere in the world could be sued for any reason in New York." *In re Ski Train Fire*, 230 F.Supp.2d at 383. Although the Plaintiff further claims that the Defendant possesses a New York freight carrier license, that is not sufficient to subject it to personal jurisdiction absent a showing that it is actually doing business in New York. *Yellow Page Solutions, Inc. v. Bell Atlantic Yellow Pages Co.*, 2001 WL 1468168, at *4 (S.D.N.Y. Nov.19, 2001).

Because of the Defendant's de minimis contacts with New York, the Court finds that the Defendant is not "doing business" on a "permanent or continuous" basis within the state so as to justify the exercise of general jurisdiction. Accordingly, the Court finds that it may not exercise per-

sonal jurisdiction over the Defendant pursuant to Section 301.

**B. As To Specific Jurisdiction**

 Section 302(a)(1) confers jurisdiction over a non-domiciliary corporation that "transacts business within the state or contracts anywhere to provide goods and services in the state," if there is a "direct relationship between the cause of action and the in state conduct." *Fort Knox Music, Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir.2000). In contrast to "doing business," "transacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality." *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir.1996). A single transaction may suffice for personal jurisdiction under Section 302(a)(1), and physical presence by the defendant in the forum state during the activity is not necessary. *Bank Brussels Lambert*, 171 F.3d at 787.

**1. The Transaction of Business Prong of Section 302(a)(1)**

 To determine whether a party in a contract action has "transacted business" within the meaning of Section 302(a)(1), courts consider, among other things, the following factors: (1) whether the defendant has an on-going contractual relationship with a New York entity; (2) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (3) whether the contract is to be performed in New York; (4) whether the contract requires notices and payments to be sent to New York; and (5) whether the contract contains a New York choice of law clause. *See Sunward Elec., Inc. v. McDonald*, 362

F.3d 17, 22–23 (2d Cir.2004) (citing *Agency Rent A Car*, 98 F.3d at 29). No single factor is dispositive. Rather, a finding of personal jurisdiction must be based upon the totality of the circumstances. *Agency Rent A Car*, 98 F.3d at 29.

 Although the parties in the present matter disagree regarding the existence of an enforceable agreement, "where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." *Whitaker*, 261 F.3d at 208. Although the Plaintiff does not allege that a written contract existed or that a contract was negotiated, the Plaintiff claims that an agreement existed between the parties regarding the storage of the Plaintiff's lumber at the Defendant's facility. Although not asserted by the Plaintiff, the Court notes that the invoices produced by the Plaintiff contain "Contract Terms and Conditions". Even assuming that an enforceable contract was formed, as explained in more detail below, the Defendant did not "transact business" in New York within the meaning of CPLR § 302(a)(1).

First, although the Plaintiff does not specifically allege that it had an on-going relationship with the Defendant beyond the shipment at issue in the present matter, the Plaintiff has produced invoices from the Defendant for dates prior to December 2005, and the Plaintiff vaguely alleges that the Defendant had "regular contacts" with the Plaintiff regarding the arrival of materials to its warehouse. Once again, resolving all doubts in the Plaintiff's favor, the Plaintiff satisfies the first factor and the Court assumes that the parties had an ongoing relationship.

Turning to the second factor, namely whether the agreement was negotiated or executed in New York, as previously discussed, Plaintiff has set forth no claim that a written contract was in fact negotiated or executed. Assuming that the "Contract Terms and Conditions" language found on the invoices constitutes a contract, or that some other agreement does in fact exist, the Plaintiff does not allege that any issue was negotiated or any agreement was executed in New York. Moreover, there is no allegation that the Defendant ever traveled to New York during the negotiation or formation of the alleged agreement. "[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of CPLR 302 if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *Worldwide Futgol Assoc., Inc. v. Event Entm't, Inc.*, 983 F.Supp. 173, 177 (E.D.N.Y.1997) (quoting Vincent C. Alexander, 1996 Supplemental Practice Commentary to Section 302, at C302:10); *United Computer Capital Corp. v. Secure Prods., L.P.*, 218 F.Supp.2d 273, 278 (N.D.N.Y.2002).

 Although telephone communications between parties may, in a few instances, suffice as "transacting business," in such a scenario, the defendant must "actively 'project' itself" into New York, thereby availing itself of the business privileges and protections of the state. *Worldwide Futgol*, 983 F.Supp. at 177 (citing *Parke–Bernet Galleries, Inc., v. Franklyn*, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)). The Plaintiff claims only that the Defendant notified the Plaintiff of the arrival of shipments and that the Plaintiff's representatives contacted the Defendant. The Defendant did not "actively project" itself into New York. *See e.g., Fiedler v. First City Nat'l Bank of Houston*, 807 F.2d 315 (2d Cir.1986) (finding no personal jurisdiction over defendant-bank that made two telephone calls and a mailing to New York plaintiffs). Although the Plaintiff also argues that the

Defendant's interactive website is sufficient to trigger personal jurisdiction and that the Defendant provided delivery services into New York, pursuant to Section 302(a)(1), the conduct must directly relate to the cause of action at issue. It is undisputed that Defendant's web site and delivery services have no relation to this matter.

Third, as to the subject matter of the alleged contract, the Defendant's storage of plywood at its New Jersey facility is at issue. Further, the Defendant does not possess any storage facility in New York. Although *the Plaintiff* may have transacted business in New York relevant to the plywood it stored at the Defendant's facility, the Plaintiff's business interactions with New York are not at issue when assessing personal jurisdiction. Rather, the Court must evaluate the Defendant's activities and conduct. *See Success Mktg. Elec. Inc. v. Titan Sec. Inc.*, 204 A.D.2d 711, 612 N.Y.S.2d 451 (2d Dept.1994); *see also Worldwide Futgol*, 983 F.Supp. at 177. Because the subject matter of the alleged agreement is located in New Jersey, the Court finds that this factor also favors the Defendant.

As to the fourth factor, it is undisputed that the Defendant sent copies of invoices and receipts to the Plaintiff in New York. The Plaintiff can, therefore, satisfy the fourth factor. However, this type of correspondence does not provide an adequate basis for personal jurisdiction. *Falow v. Cucci*, 2003 WL 22999458, at *4 (S.D.N.Y. Dec.19, 2003); *Int'l Customs Assoc. v. Ford Motor Co.*, 893 F.Supp. 1251, 1261 (S.D.N.Y.1995).

Finally, the Plaintiff does not claim that the alleged agreement contained any choice of law provision or that the parties ever discussed choice of law. Moreover, the "Contract Terms" contained on the invoices produced by the Plaintiff do not contain a choice of law provision.

In sum, the only evidence that the Plaintiff has proffered to support jurisdiction is that the parties had an on-going relationship and that the Defendant sent invoices and limited correspondence into New York. Thus, because the Plaintiff has failed to establish even a prima facie case regarding three of the five factors, there is no basis for an exercise of personal jurisdiction pursuant to the "transacting business" prong of Section 302(a)(1). Accordingly, the Court finds that it may not exercise jurisdiction over the Defendant pursuant to the transacting of business prong of section 302(a)(1).

**2. Supplying Goods or Services**

The second prong of Section 302(a)(1) extends jurisdiction to defendants who "contract anywhere to supply goods or services in the state." *Bank Brussels Lambert*, 171 F.3d at 789. In applying this provision, Courts may consider: (1) whether the defendant collected New York sales tax in connection with the transaction; (2) whether the documents or purchase orders provide for shipment into New York; (3) whether the defendant solicited the contract in New York; (4) whether the defendant entered New York for purposes of performing the contract; and (5) any other factor showing that the defendant purposefully availed itself of the privilege of transacting business in New York. *See Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F.Supp.2d 202, at 210 (E.D.N.Y.2006).

In the present case, it is undisputed that the plywood was not shipped by the Defendant into New York. It is further undisputed that the plywood was to be maintained by the Defendant in New Jersey until picked up by the Plaintiff or the Plaintiff's clients. Moreover, neither party address-

es whether the Defendant collected New York sales tax and the invoices produced by the Plaintiff do not depict New York sales tax. The Plaintiff has set forth no evidence that the Defendant solicited the contract in New York and there is no evidence that the Defendant entered New York with regard to the present matter.

Section 302(a)(1) captures "cases where there are minimal contacts in New York, and, for example, a contract is made elsewhere for goods to be delivered or services to be performed in New York." *Bank Brussels Lambert,* 171 F.3d at 789. The Plaintiff does not assert that the present dispute involves goods delivered or services to be performed in New York. Accordingly, the Court finds that Section 302(a)(1) provides no basis for jurisdiction.

### C. As To Section 302(a)(3)

Section 302(a)(3) authorizes the Courts to exercise personal jurisdiction over non-domiciliaries who commit tortious acts outside of New York which result in injury within the state. N.Y.C.P.L.R. Section 302(a)(3). In the present matter, despite the Plaintiff's allegations in the complaint, that the Defendant committed a tort by converting the Plaintiff's property, the Plaintiff has not alleged that the Court could exercise jurisdiction pursuant to Section 302(a)(3). Nonetheless, the Court sua sponte reviewed this jurisdiction and determines that the Defendant's alleged conversion occurred in New Jersey and therefore, New Jersey was the site of the injury. Although the Plaintiff may have suffered financial injury in New York, "[t]he occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir.2001). Accordingly, the Court lacks jurisdiction pursuant to Section 302(a)(3).

### D. Due Process Considerations

Because the relevant statutes of New York provide no grounds for jurisdiction over the Defendant, the Court need not proceed to a consideration of the Defendant's Due Process rights.

## II. VENUE

Because the Court lacks personal jurisdiction over the Defendant, the Court need not consider the Defendant's motion to dismiss as it pertains to improper venue. Accordingly, the Defendant's motion to transfer or change venue is denied.

### CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Defendant's motion to dismiss this action for lack of personal jurisdiction is **GRANTED;** and it is further

**ORDERED,** that the Defendant's motion to dismiss for improper venue or alternatively to transfer venue is **DENIED;** and it is further

**ORDERED** that the Clerk is directed to close this case.

**SO ORDERED.**