**RATES TECHNOLOGY INC., Plaintiff,**

v.

**CEQUEL COMMUNICATIONS, LLC d/b/a Suddenlink Communications, Defendant.**

**No. 13 Civ. 0011(ALC)(FM).**

United States District Court, S.D. New York.

Signed March 25, 2014.

---

Milton Springut, Tal S. Benschar, Springut Law PC, Scott Spencer, Scott Spencer Law, New York, NY, for Plaintiff.

Jeremy M. Suhr, Larry Rouse, Mark W. McGrory, Rouse Hendricks German May PC, Kansas City, MO, Meghan Silhan Mastrocovi, Kristina Marvelle Allen, McGuireWoods LLP, New York, NY, for Defendant.

## MEMORANDUM & ORDER

ANDREW L. CARTER, JR., District Judge.

### I. Introduction

Plaintiff Rates Technology Inc. ("RTF") filed the instant action against Defendant Cequel Communications, LLC d/b/a Sud-

denlink Communications ("Cequel"), alleging infringement of its patents related to the routing of telephone calls based on cost and a method for updating the database in a telephone call routing system. Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendant argues Plaintiff cannot establish personal jurisdiction where Defendant has no contacts that would support the exercise of jurisdiction over it in this forum. Plaintiff claims since Defendant has an ongoing, permanent arrangement with third parties to use transmission networks and fiber routes that pass through New York, there are sufficient contacts to demonstrate personal jurisdiction. Plaintiff also seeks jurisdictional discovery if the Court finds Plaintiff has failed to make a *prima facie* showing of personal jurisdiction.

## II. Background

As set forth in the Complaint, RTI holds a valid and enforceable patent, known as the 085 patent, "for inventions relating to the routing of telephone calls based upon cost." (Am. Compl. ¶ 8.) RTI claims Cequel has infringed on the 085 patent through "making, using, advertising, marketing, selling, and/or offering to sell IP-based services, including telephone products and/or services which include high capacity switches to offer local and toll services to its customers[.]" (*Id.* ¶ 10.) Such infringement includes " 'soft switches' and related network equipment (such as media gateways, signaling gateways, applications servers and other converged network elements) to enable the switching and routing of voice calls over IP packet networks ... as well as managing the related PSTN call traffic interface ...." (*Id.*)

RTI holds a second valid and enforceable patent, known as the 769 patent, "for inventions relating to a method for updat-ing a database in a telephone call routing system." (*Id.* ¶ 16.) Cequel allegedly infringed on the 769 patent through "making, using, advertising, marketing, selling, and/or offering to sell IP-based services, including using telephone products and/or service which include high-capacity switches to offer local and toll services to its customers[.]" (*Id.* ¶ 18.) Such infringement includes " 'soft switches' and related network equipment (such as media gateways, signaling gateways, applications servers and other converged network elements) to enable the switching and routing of voice calls over IP packet networks, as well as managing the related PSTN call traffic interface ...." (*Id.*)

Cequel is a limited liability company incorporated in Delaware with its principal place of business in St. Louis, Missouri. (*Id.* ¶ 2.) "Cequel provides 'Voice over Internet Protocol ('VoIP') telephone services' and ... provides 'all ... local and long distance calls' where the 'long distance includes the 50 states.' " (*Id.* ¶ 5(a).) "VoIP services route voice calls as data." (*Id.* ¶ 5(c).) "A national network for VoIP telephone services routes and disperses calls throughout the country including New York...." (*Id.*) In turn, "some data of Cequel ... may 'pass through' systems or facilities ... in New York." (*Id.* ¶ 5(b).)

According to Plaintiff, Cequel represented to its inventors at a conference that "the 'core backbone' of its 'national' 'network' includes 'New York,' and ... provided a map showing ... that its 'Core backbone' runs through New York, among other places." (*Id.* ¶ 5(a).) Because "the systems or facilities in New York are part of the 'core backbone[,]' ... such activities are ongoing and continuous." (*Id.* ¶ 5(c).) RTI asserts, "Cequel is systematically and continually doing business in New York, either itself or through an agent, by maintaining, leasing, renting or otherwise using

computer and/or data transmission equipment which form part of its 'Core Backbone[ ]' . . . ." (*Id.* ¶ 5(e).)

In the alternative, Plaintiff alleges "Cequel's 'Core Backbone' and the computers or other data transmission equipment that comprise [sic] same, are part of the apparatus and means of practicing the patented art relating to least cost-routing. . . ." (*Id.* ¶ 5(f).) Plaintiff claims Cequel's infringement of its patents injured Plaintiff in New York, and Cequel derives substantial revenue from interstate or international commerce. (*Id.* ¶ 5(g).) "The acts of infringement . . . occur throughout Cequel's system, which . . . is located throughout the United States, and is meant to serve customers from many places in the United States to the entirety of the country. (*Id.*) Therefore, Cequel "should reasonably have expected its acts committed to have consequences in the State of New York." (*Id.*)

Attached to its Motion, Cequel included an affidavit from Rodney Lanham, its Vice President of Technical Operations.[1] (Lanham Decl. ¶ 2.) Mr. Lanham states, "Cequel . . . is in the business of providing cable broadband services, including [VoIP] telephony services, to customers in states such as Arizona, Arkansas, California, Louisiana, Missouri, North Carolina, Ohio, Oklahoma, Texas, and West Virginia." (*Id.* ¶ 5.) Cequel does not have any offices, employees, bank accounts, or property in New York. (*Id.* ¶¶ 6, 8–9.) Indeed, Cequel is not registered to do business in New York and has not designated an agent for service of process there. (*Id.* ¶¶ 10–11.) Cequel does not have a mailing address or telephone listing in New York, does not transact business in New York, and does not contract to supply goods and services in New York. (*Id.* ¶¶ 7, 12.) Nor does Cequel solicit business in New York or derive any substantial revenue from goods or services in New York. (*Id.* ¶ 13.)

Since Cequel does not own or possess any equipment in New York, it "has arranged for rights to have its data routed through networks and fiber that third parties own and operate . . . including one that traverses New York." (*Id.* ¶ 19.) Mr. Lanham further states Cequel has no New York customers, so "no data traffic originates [or] . . . exits the network" in New York. (*Id.* ¶ 20.) Data bound for other locations, however, might be routed through New York "via fiber owned and operated by third parties." (*Id.*) Cequel admittedly has an Ashburn, Virginia to Chicago fiber route, which contains a pass through in New York. (Lanham Decl., Ex. 1 at 11.) The Ashburn to Chicago fiber route purportedly provides a redundancy of routes for video data traffic for television services and to transport data traffic originating on or destined for the Internet, neither of which include telephony traffic. (Lanham Decl. ¶ 21.)

The Ashburn to Chicago fiber route could also potentially be used as a redundancy route for VoIP telephony services, according to Mr. Lanham. (*Id.* ¶ 22.) "Only on extremely rare occasions would VoIP telephony data traffic traverse the Ashburn to Chicago fiber route." (*Id.*) He gives examples such as if there was a significant failure in another portion of the network, then such traffic could be routed through New York. (*Id.*) Yet, "none of the computers or other data transmission

---

1. On a Motion to Dismiss for lack of personal jurisdiction, the Court may properly consider affidavits submitted by the parties. *See Mantello v. Hall*, 947 F.Supp. 92, 95 (S.D.N.Y. 1996) ("Because a motion to dismiss based on lack of personal jurisdiction is 'inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" (citation omitted)).

equipment that determine the routing of telephony calls is located in New York." (*Id.* ¶ 23.)

## III. Discussion

The Complaint contains two causes of action seeking monetary damages and injunctive relief for alleged violations of Plaintiff's 085 patent and 769 patent. Defendant moves to dismiss the Complaint under Rule 12(b)(2) on the grounds that Plaintiff has not sufficiently established personal jurisdiction. Plaintiff also requests the opportunity to engage in jurisdictional discovery should the Court conclude it has not made a *prima facie* showing of personal jurisdiction.

### A. *Personal Jurisdiction*

■ Rule 12(b)(2) of the Federal Rules of Civil Procedure allows for dismissal where Plaintiff fails to carry its burden of showing the Court has jurisdiction to hear its claim. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). To defeat a Rule 12(b)(2) Motion, Plaintiff must " 'plead[ ] in good faith, legally sufficient allegations of jurisdiction,' i.e., by making a *'prima facie* showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998) (internal citations omitted); *accord Troma Entm't Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir.2013) ("In other words, a complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are 'legally sufficient allegations of jurisdiction.' " (citation omitted)). "[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are

resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993). The Court, however, "will not draw 'argumentative inferences' in the plaintiff's favor" and need not "accept as true a legal conclusion couched as factual allegation." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir.2012) (internal citations omitted).

■ "To determine whether it has personal jurisdiction over Defendant, the Court must engage in a two-step inquiry." [2] *DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153(RA), 2014 WL 496875, at *2 (S.D.N.Y. Feb. 5, 2014). Absent a statutory provision allowing for nationwide jurisdiction, "[i]n a federal question case where a defendant resides outside the forum state, a federal court applies the forum states personal jurisdiction rules ...." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). If the exercise of jurisdiction over an out-of-state defendant comports with New York law, as the forum in this case, the court must then determine whether "extension of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez (Bank Brussels II)*, 305 F.3d 120, 124 (2d Cir. 2002).

■ A plaintiff can establish personal jurisdiction under New York law by "demonstrat[ing] either that the defendant was 'present' and 'doing business' in New York within the meaning of [New York Civil Procedure Law and Rules ('CPLR') ] § 301," commonly referred to as general jurisdiction, "or that the defendant com-

---

**2.** Courts often turn to Federal Circuit law when analyzing personal jurisdiction in patent claims. *Rates Tech. Inc. v. Broadvox Holding Co., LLC*, No. 13 Civ. 0152(SAS), 2014 WL 46538, at *1 (S.D.N.Y. Jan. 6, 2014). "The test for personal jurisdiction in the Federal Circuit mirrors the one employed by the Second Circuit." *Id.*

mitted acts within the scope of New York's long-arm statute, [CPLR] § 302[,]" commonly referred to as specific jurisdiction. *Schultz v. Safra Nat'l Bank of N.Y.*, 377 Fed.Appx. 101, 102 (2d Cir.2010). Here, Plaintiff argues it can demonstrate both general jurisdiction under CPLR § 301 and specific jurisdiction under CPLR § 302.

### i. General Jurisdiction under CPLR § 301

■ Pursuant to CPLR § 301, "a corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to its New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)). "In order to establish that this standard is met, a plaintiff must show that a defendant engaged in 'continuous, permanent, and substantial activity in New York.'" *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir.2000). "New York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir.1990).

■ Nowhere does Plaintiff allege that Cequel has offices, bank accounts, or real estate in New York. In fact, Mr. Lanham's affidavit confirms Cequel has no such contacts. (Lanham Decl. ¶¶ 6, 8–9.) Plaintiff also does not allege Cequel solicits New York residents to buy its services, and Mr.

Lanham confirms Cequel has no New York customers. (*Id.* ¶¶ 5, 12–13.) Instead, Plaintiff contends Cequel is systematically and continuously doing business in New York through an agent by leasing or using the transmission equipment that forms the New York pass through in Cequel's "core backbone."

■ The Second Circuit has recognized that personal jurisdiction over a foreign corporation can be established by the corporation's engagement of an agent in New York.

> Under well-established New York law, a court of New York may assert jurisdiction over a foreign corporation when it affiliates itself with a New York representative entity and that New York representative renders services on behalf of the foreign corporation that go beyond mere solicitation and are sufficiently important to the foreign entity that the corporation itself would perform equivalent services if no agent were available.

*Wiwa*, 226 F.3d at 95; *see also Saudi v. Marine Atl., Ltd.*, 306 Fed.Appx. 653, 655 (2d Cir.2009) ("A foreign corporation may be subject to general jurisdiction for the continuous and substantial activities of an agent."). While RTI need not demonstrate "the defendant exercised direct control over its putative agent," it must show the agent was "primarily employed by the defendant and not engaged in similar services for other clients." *Wiwa*, 226 F.3d at 95. Independent contractors or companies that provide services to many clients with no distinct decision-making capabilities are not agents of a defendant for purposes of establishing personal jurisdiction. *See, e.g., id.; Doe v. Abercrombie & Kent, Inc.*, No. 09 Civ. 7052(VM), 2010 WL 286640, at *3 (S.D.N.Y. Jan. 19, 2010); *Biro v. Nast*, No. 11 Civ. 4442(JPO), 2012 WL 3262770, at *8 (S.D.N.Y. Aug. 10, 2012); *Miller v.*

*Surf Props., Inc.,* 4 N.Y.2d 475, 481, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958).

■ As the *Abercrombie & Kent* court noted, "The bar for a plaintiff to establish agency in the jurisdictional context is set high . . . ." 2010 WL 286640, at *3. Here, Plaintiff has not alleged facts that establish the lease or use of fiber networks owned or operated by third parties in New York was done solely at the behest of Cequel and not for other clients lacking network infrastructure in the area. *Cf. Wiwa,* 226 F.3d at 95–96 (noting where the alleged agents "devoted one hundred percent of their time to the defendants' business[,]" "perform[ed only] investor relations services on the defendants' behalf[,]" were "fully funded" by the defendants, and "sought the defendants' approval on important decisions" personal jurisdiction through agency was established). Moreover, there are no allegations that the company operating the New York pass through would have the ability to contractually bind or otherwise make decisions on behalf of Defendant. *See Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,* 160 F.Supp.2d 722, 737 (S.D.N.Y.2001) (noting in determining agency for jurisdictional purposes, courts should consider "the *importance* of the task being assigned to the New York entity and the *degree of responsibility* that is entrusted" (emphasis in original)); *Sedig v. Okemo Mountain,* 204 A.D.2d 709, 710, 612 N.Y.S.2d 643 (App.Div.2d Dep't 1994) ("There is no merit to the plaintiffs claim that an agency relationship exists . . . because there is no evidence that the shops have authority to contractually bind the defendant and thus serve as its agents for jurisdictional purposes." (citation omitted)). In sum, Plaintiff has not offered facts showing the owners or operators of the New York pass through are "primarily employed by [Cequel] and not engaged in similar services for other clients," *Wiwa,* 226 F.3d at 95, thereby establishing an agency relationship in this context.

■ Next, Plaintiff argues Cequel's arrangement with a third party for use of the New York pass through in various parts of its business, including to provide redundancy of routes for video data traffic for television services, to transport data to and from the Internet, and as an automatic back-up route in case of a system failure for VoIP telephony, is permanent and constant, so as to establish general jurisdiction over Defendant.[3] Plaintiff analogizes the continuous and permanent utilization of this equipment to the on-going lease for an apartment in *Bank Brussels II.* Importantly, in that case, the Circuit found the eight-year lease of an apartment in New York was sufficient to establish the first prong under CPLR § 302(a)(3) for *specific jurisdiction, Bank Brussels II,* 305 F.3d at 126–27, but specifically observed that "general jurisdiction could not be maintained over defendant in these circumstances." *Id.* at 127. Indeed, the Circuit did not take issue with the district court's ruling that "renting an apartment in the forum fails to amount to the minimum contacts necessary to find general jurisdiction." *Lambert v. Fiddler Gonzalez & Rodriguez,* No. 96 Civ. 7233(LMM), 2001 WL 893362, at *7 (S.D.N.Y. Aug. 8, 2001). The same is true here.

---

**3.** Mr. Lanham's affidavit states the Ashburn to Chicago fiber route, containing the New York pass through, carries telephony traffic only on rare occasions, such as when a system failure occurs in another location. (Lanham Decl. ¶¶ 21–22.) Plaintiff argues even if the New York pass through, as a redundancy route, only carries telephony traffic rarely, Cequel must still continuously maintain the route in the event of an emergency. The inference suggested by Plaintiff is a reasonable one and will be drawn in Plaintiff's favor.

Even if Plaintiff's allegations were sufficient to establish general jurisdiction under New York law, they would be inadequate to satisfy Due Process requirements. Recently, the Supreme Court clarified *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, which form the principles of general jurisdiction. *Daimler AG v. Bauman*, —— U.S. ——, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), echoed *Goodyear Dunlop Tires Operations, S.A. v. Brown*, in that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." —— U.S. ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011). In fact, *"Goodyear* made clear that only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 134 S.Ct. at 760.

Traditionally, courts have looked to the corporation's principle place of business and state of incorporation as the " 'paradig[m] ... bases for general jurisdiction.' " *Id.* (citation omitted). *"Daimler AG*, however, reaffirmed that ... general jurisdiction might, 'in an exceptional case,' extend beyond a corporation's state of incorporation and principal place of business to a forum where 'a corporation's operations ... [are] so substantial and of such a nature as to render the corporation at home in that Stated.' " *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38–39 (2d Cir.2014) (quoting *Da-*

*imler*, 134 S.Ct. at 761 n. 19) (emphasis in original).

The limited contacts Cequel has with New York cannot be considered "so continuous and systematic" to convey general personal jurisdiction. The only tie to the forum is the lease of the New York pass through to furnish Defendant with nationwide service capabilities for its non-New York customers in the event of a system failure, which is simply not enough. For example, in *Helicopteros Nacionales de Colom., S.A. v. Hall*, the Supreme Court held, "[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." 466 U.S. 408, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The lease of the New York fiber route, even if "permanent" and "ongoing" strikes this Court as no different. Moreover, the lack of an office, employees, bank accounts, or property in the forum is significant. As the Second Circuit observed, if the Court were to accept Plaintiff's theory of general jurisdiction, "[i]t is difficult to see where jurisdiction would end; foreign-state ... corporations could be found 'at home' essentially anywhere, based on the briefest and most trivial of contacts." *Roman Catholic Diocese*, 745 F.3d at 41.

### ii. Specific Jurisdiction under CPLR § 302

RTI also points to subsections two and three of the New York long-arm statute to demonstrate specific jurisdiction over Cequel.[4] Section 302(a)(2) provides for

---

4. In the Amended Complaint, Plaintiff states, "Cequel is subject to specific jurisdiction [in New York] pursuant to N.Y. CPLR § 302(a)(1)...." (Am. Compl. ¶ 5(f).) RTI does not address at all in its papers why subsection one provides a basis for jurisdic-

tion. Notwithstanding RTFs abandonment of this argument, § 302(a)(1) is not applicable under the facts of this case. "Section 302(a)(1) confers jurisdiction over a non-domiciliary corporation that 'transacts business within the state or contracts anywhere to pro-

jurisdiction over a party that "commits a tortious act within the state," with one exception not applicable here. Drawing from the opinions of the New York Court of Appeals, the Second Circuit has held, "[A] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez (Bank Brussels I)*, 171 F.3d 779, 790 (2d Cir. 1999). In *Bensusan Restaurant Corp. v. King*, the Circuit noted the "view [under New York law] that CPLR § 302(a)(2) reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." 126 F.3d 25, 28 (2d Cir.1997) (citing *Feathers v. McLucas*, 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965)). Put differently, " '[t]o subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State.' " *Id.* at 29 (quoting *Carlson v. Cuevas*, 932 F.Supp. 76, 80 (S.D.N.Y.1996)).

 Noticeably absent in this case are any allegations that Cequel was present in New York when the alleged infringement(s) occurred. In the Amended Complaint, RTI claims the equipment and fiber routes Cequel leases in New York are related to the least cost-routing, which is the subject of the patents at issue in this action. According to Plaintiff, "the *availability* and *location* of routes are cost critical to the business of completing the call."

(Pl.'s Opp. at 6 (emphasis in original); Spencer Deck, Ex. C.) Therefore, Cequel's use of the New York routes should be viewed as related to the claim of infringement, "even if it alone does not constitute infringement...." (Pl.'s Opp. at 6.) This argument, however, simply misstates the law under § 302(a)(2). Even if the use of the New York pass through relates to the patent infringement claims, RTI must still show Cequel's physical presence in New York. Moreover, the owners or operators of the New York fiber route cannot be characterized as Cequel's agents for purposes of jurisdiction for all of the reasons previously stated. Because Plaintiff has not illustrated Cequel's physical presence in New York, it cannot sustain specific jurisdiction under § 302(a)(2).

Lastly, Plaintiff turns to § 302(a)(3)(i) of the long-arm statute. Under this subsection, the Court may exercise jurisdiction over a non-resident who:

> [C]ommits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
> · · ·
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

N.Y. CPLR § 302(a)(3). Plaintiff claims even if the infringement occurred outside of New York, the effects of that conduct were felt by Plaintiff within New York.

---

vide goods and services in the state,' ... if there is a 'direct relationship between the cause of action and the in state conduct.' " *C.B.C. Wood Prods., Inc. v. LMD Integrated Logistics Servs., Inc.*, 455 F.Supp.2d 218, 224 (E.D.N.Y.2006) (quoting *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir.2000)). There are no assertions, however, that Cequel contracted to provide goods or services in New York or that the patent dispute has "aris-

en from" Cequel's lease of network equipment in New York. *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir.2006) (noting where "the disputes could not be characterized as having 'arisen from' the New York activity[,]" there is not a "sufficient nexus between the parties' New York contacts and the claim asserted" to confer jurisdiction under § 302(a)(1)).

Defendant, on the other hand, argues under federal law, the location of the alleged injury is not in New York, and as such, RTI cannot use § 302(a)(3) as a basis for jurisdiction.

 "[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Bank Brussels I,* 171 F.3d at 791. "'[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff.'" *Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir.1990) (quoting *Carte v. Parkoff,* 152 A.D.2d 615, 616, 543 N.Y.S.2d 718 (App.Div.2d Dep't 1989)). "An injury ... does not occur within the state simply because the plaintiff is a resident." *Id.; accord Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir.2001) ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." (internal quotation marks and citation omitted)).

 Here, RTI asserts "through the sale of infringing items to specific customers, the acts of infringement here occurred throughout Cequel's system, which [is] ... located throughout the United States, and is meant to serve customers from many places in the United States to the entirety of the country." (Am. Compl. ¶ 5(g).) Because "the infringement here is dispersed throughout the country[,] ... the injury suffered by RTI through infringement of its patents is felt most directly at the place it holds the patents-in-suit, New York." (*Id.*) Plaintiff relies on *Penguin Group (USA), Inc. v. American Buddha (Penguin II),* 16 N.Y.3d 295, 921 N.Y.S.2d 171,

946 N.E.2d 159 (2011), to argue the Court should treat the instant action like internet-based infringement and find the situs of the injury to be the location of the intellectual property holder.

In *Penguin II,* a book publisher brought a copyright infringement action against a foreign corporation for uploading four books to the Internet and making them available free of charge to the site's members and anyone with an Internet connection. *Id.* at 300, 921 N.Y.S.2d 171, 946 N.E.2d 159. The foreign corporation challenged personal jurisdiction, and the New York Court of Appeals, upon certified question from the Second Circuit, held, "[i]n copyright infringement cases involving the uploading of a copyrighted printed literary work onto the Internet, ... the situs of injury for purposes of determining long-arm jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) ... is the location of the copyright holder." *Id.* at 302, 921 N.Y.S.2d 171, 946 N.E.2d 159. After *Penguin II,* the Second Circuit pointed out the limitations on its reach. "[The Court of Appeals] explicitly declined 'to address whether a New York copyright holder sustains an in-state injury pursuant to N.Y. C.P.L.R. 302(a)(3)(ii) in a copyright infringement case that does not allege digital piracy[.]'" *Troma,* 729 F.3d at 219. The question then is whether the facts presented here properly fall within the ambit of *Penguin II* and warrant departing from established notions of the situs of the injury. This Court finds they do not.

Plaintiff characterizes its injury as "difficult to identify and quantify and is dispersed throughout the country and perhaps the world." (Pl.'s Opp. at 11.) In doing so, it suggests the alleged injury is analogous to the effects of the digital piracy in *Penguin II.* Importantly, in the digital piracy context, the Court of Appeals emphasized it was not simply the copying

or uploading of the material that was the source of the injury, but the "instantaneous availability of those copyrighted works on American Buddha's Web sites for anyone, in New York or elsewhere, with an Internet connection to read and download the books free of charge." *Penguin II*, 16 N.Y.3d at 304–05, 921 N.Y.S.2d 171, 946 N.E.2d 159. Even accepting Plaintiff's broad assertions that Cequel's entire network contributes to the infringement, access to Cequel's network is restricted, unlike the Internet, to customers outside of New York. *Cf. Mrs. U.S. Nat'l Pageant, Inc. v. Miss U.S. Org., LLC*, 875 F.Supp.2d 211, 224 (W.D.N.Y.2012) ("I do not read [*Penguin II* ] as holding that personal jurisdiction may always be had over the defendant in any intellectual property case involving the use of the internet, where the owner of that property resides in New York. The Court of Appeals expressly disavowed any such holding. . . .").

Moreover, RTI does not allege Cequel solicits New Yorkers to buy its services but rather, customers from other states, in using Cequel's services, may initiate communications that pass through New York. It is hard to see how, under these facts, the alleged infringement would likely "cause harm through the loss of business inside the state. . . ." *Penguin II*, 16 N.Y.3d at 306, 921 N.Y.S.2d 171, 946 N.E.2d 159 (citing *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 204, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978)); *see also Freeplay Music, Inc. v. Cox Radio, Inc.*, No. 04 Civ. 5238(GEL), 2005 WL 1500896, at *8 (S.D.N.Y. June 23, 2005) (finding where the plaintiff did not allege a defendant's use of unlicensed material in New York or that New York residents accessed the unlicensed material, the plaintiff did not show an injury within New York). There was no such difficulty in *Penguin II*.

Drawing upon guidance from the Federal Circuit, several courts have held in patent infringement cases the situs of the injury is the place where the infringing sale is made. *See, e.g., Wing Shing Prods. (BVI), Ltd. v. Simatelex Manufactory Co., Ltd.*, 479 F.Supp.2d 388, 400 (S.D.N.Y. 2007) (acknowledging the Federal Circuit's holding in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (1994), that "the situs of the injury is the location, or locations, at which the infringing activity directly impacts the interests of the patentee, . . . the place of the infringing sales"); *Art Leather Mfg. Co., Inc. v. Albumx Corp.*, 888 F.Supp. 565, 567–68 (S.D.N.Y. 1995) ("A patent holder suffers economic loss at the place where an infringing sale is made because the holder loses business there."); *Safe–Strap Co., Inc. v. RDN, Int'l*, No. 01 Civ. 3695(JSM), 2002 WL 14360, at *1 (S.D.N.Y. Jan. 4, 2002) ("[T]he Federal Circuit has rejected the place of business of the patent holder as the situs of the injury in a patent infringement action and held that the situs is the place of the sale of the infringing goods."). Yet, there are no allegations that the purportedly infringing sales took place in New York, and Mr. Lanham's affidavit affirmatively confirms there are no sales to New York residents.

Since RTI cannot establish an injury within New York, the Court need not consider the other elements of § 302(a)(3). Similarly, since RTI cannot establish personal jurisdiction under New York law, the Court need not reach the Due Process analysis.

## B. *Jurisdictional Discovery*

Where a plaintiff has failed to state a *prima facie* case for personal jurisdiction, the Second Circuit has held it is not entitled to jurisdictional discovery. *Jazini*, 148 F.3d at 186. Consequently, "[d]istrict courts in this circuit routinely reject requests for jurisdictional discovery

where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction." *Stutts v. De Dietrich Group,* 465 F.Supp.2d 156, 169 (E.D.N.Y.2006) (collecting cases). The decision of whether or not to allow discovery is within the Court's sound discretion. *Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 255 (2d Cir. 2007).

Given the sparse allegations in the Amended Complaint, and the affidavit of Mr. Lanham, which supplies specific information about Cequel's network and contacts, the Court is skeptical that additional discovery would cure the deficiencies in Plaintiff's pleading. *See A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines,* 828 F.Supp.2d 557, 575 (E.D.N.Y.2011) ("[J]urisdictional discovery is not permitted where, as here, the defendant submits an affidavit that provides all the necessary facts and answers all the questions regarding jurisdiction."). Therefore, based on the circumstances of this particular case, the Court declines RTFs request for jurisdictional discovery.

## IV. Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED** in its entirety for want of personal jurisdiction. The Court does not address the remaining arguments of the parties because they are without merit. Additionally, the Court does not address Plaintiff's counsel's Motion to Withdraw, as it is now moot due to the dismissal of this case.

The Clerk of Court is respectfully directed to terminate the Motions at Dkt. Nos. 20 and 30 and close this case from the Court's active docket.

**SO ORDERED.**